**CHART, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 79–0836.**

United States District Court, District of Columbia.

Dec. 4, 1979.

Jack A. Overton, Jr., Robert S. Bernard, Albany, N.Y., Lawrence D. Wasko, Seamon, Wasko & Ozment, Washington, D.C., for plaintiff.

John J. McCarthy, Donald J. Gavin, Robert L. Gordon, Tax Division, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This action presents to the Court a question of first impression: whether an organization which qualifies under section 501(e) of the Internal Revenue Code of 1954 [hereinafter, "the Code"], which is the tax-exemption provision enacted by Congress specifically for cooperative hospital service organizations, may also qualify under section 501(c)(3) of the Code, which is the general provision for tax-exempt organizations? For the reasons that follow, the Court answers the question in the affirmative.

### I. BACKGROUND

Before the Court are cross-motions for summary judgment. There are no material

facts in dispute, and all such facts are set out in the administrative record compiled by the Secretary of the Treasury.

The plaintiff is a not-for-profit corporation incorporated and operated for the exclusive purpose of providing, on a non-profit basis, shared electronic data processing services to its tax-exempt non-profit member hospitals.

The plaintiff's membership consists entirely of hospitals which are exempt from federal income tax pursuant to section 501(c)(3) of the Code. The plaintiff, as a membership corporation, has no capital stock, no stockholders, and pays no dividends of any kind. Only employees who are actually engaged in the daily operation of the plaintiff's activities are compensated for their services. The sole source of financial support for the plaintiff is membership fees which are structured upon the plaintiff's annual budgeted operating costs. Such operating costs are incurred solely for the purpose of providing shared electronic data processing services to its member hospitals. The services which the plaintiff provides to its members are an integral part of the hospital's activities. The plaintiff provides highly specialized services that are not available from commercial enterprises. The plaintiff has never offered its services to any one other than its members, nor has it ever engaged in activities other than the rendering of shared electronic data processing services.

The plaintiff's assets are dedicated to exempt purposes. No part of the plaintiff's net earnings inure to the benefit of any private shareholder or individual. No substantial part of the plaintiff's activities consists of carrying on propaganda or otherwise attempting to influence legislation. The plaintiff does not participate in or intervene in any political campaign on behalf of any candidate for public office.

The plaintiff has exhausted its administrative remedies. The Court has jurisdiction over this action pursuant to section 7428 of the Code and 28 U.S.C. § 1346(e).

## II. THE STATUTORY SCHEME

In relevant part, section 501(c)(3) of the Code provides an exemption for:

[c]orporations . . . organized and operated exclusively for . . . charitable . . . purposes . . . no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

Section 502(a) of the Code provides that: An organization operated for the primary purpose of carrying on a trade or business for profit shall not be exempt from taxation under section 501 on the ground that all of its profits are payable to one or more organizations exempt from taxation under section 501.

Organizations described in section 502(a) are called "feeder organizations." Such organizations are further defined by the Internal Revenue Service in the regulations. Section 1.502–1(b) of the Treasury Regulations attempts to further clarify the definition of "feeder organizations" as follows:

If a subsidiary organization of a tax-exempt organization would itself be exempt on the ground that its activities are an integral part of the exempt activities of the parent organization, its exemption will not be lost because, as a matter of accounting between the two organizations, the subsidiary derives a profit from its dealings with its parent organization, for example, a subsidiary organization which is operated for the sole purpose of furnishing electric power used by its parent organization, a tax-exempt educational organization, in carrying on its educational activities. However, the subsidiary organization is not exempt from tax if it is operated for the primary purpose of carrying on a trade or business which would be an unrelated trade or business (that is, unrelated to exempt activities) if

regularly carried on by the parent organization.

The regulations also contain the following example:

[I]f a subsidiary organization is operated primarily for the purpose of furnishing electric power to consumers other than its parent organization (and the parent's tax-exempt subsidiary organizations), it is not exempt since such business would be an unrelated trade or business if regularly carried on by the parent organization. Similarly, if the organization is owned by several unrelated exempt organizations, and is operated for the purpose of furnishing electric power to each of them, it is not exempt since such business would be an unrelated trade or business if regularly carried on by any one of the tax-exempt organizations.

In 1958, the Court of Claims decided *Hospital Bureau of Standards & Supplies v. United States*, 158 F.Supp. 560, 141 Ct.Cl. 91 (1958). The plaintiff in the *Hospital Bureau* case was a corporation formed to evaluate and purchase necessary hospital supplies for its members who were tax-exempt, charitable hospitals. The government took the position that the corporation was not entitled to tax-exempt status. The court held that the corporation was entitled to the exemption because the services performed by the corporation were an integral part of the operations of its hospital members and it was not operating for the primary purpose of carrying on a trade or business for profit. *Id.* at 562, 564.

Despite the Court of Claims decision in *Hospital Bureau*, the Internal Revenue Service continued its position that if two or more exempt hospitals join together in creating an entity to perform services for the hospitals, the entity constitutes a feeder organization and is, therefore, not tax-exempt. *See* Senate Report No. 744, 90th Cong., 1st Sess. 200 (1967). As a result, hospitals were reluctant to form shared service oganizations and potential donors were hesitant to make grants. *See* 114 Cong. Rec. 8112 (1968).

In 1968, section 109 of the Revenue and Expenditure Control Act of 1968, 82 Stats. 251 (1968), was enacted as section 501(e) of the Code. Section 501(e) provides:

(e) Cooperative Hospital Service Organizations.—For purposes of this title, an organization shall be treated as an organization organized and operated exclusively for charitable purposes, if—

(1) such organization is organized and operated solely—

(A) to perform, on a centralized basis, one or more of the following services which, if performed on its own behalf by a hospital which is an organization described in subsection (c)(3) and exempt from taxation under subsection (a), would constitute activities in exercising or performing the purpose or function constituting the basis for its exemption: data processing, purchasing, warehousing, billing and collection, food, clinical, industrial engineering, laboratory, printing, communications, record center, personnel (including selection, testing, training, and education or personnel) services; and

(B) to perform such services solely for two or more hospitals each of which is—

(i) an organization described in subsection (c)(3) which is exempt from taxation under subsection (a),

(ii) a constituent part of an organization described in subsection (c)(3) which is exempt from taxation under subsection (a) and which, if organized and operated as a separate entity, would constitute an organization described in subsection (c)(3), or

(iii) owned and operated by the United States, a State, the District of Columbia, or a possession of the United States, or a political subdivision or an agency or instrumentality of any of the foregoing;

(2) such organization is organized and operated on a cooperative basis and allocated or pays, within 8½ months after the close of its taxable year, all net earnings to patrons on the basis of services performed for them; and

(3) if such organization has capital stock, all of such stock outstanding is owned by its patrons.

For purposes of this title, any organization which, by reason of the preceding sentence, is an organization described in subsection (c)(3) and exempt from taxation under subsection (a), shall be treated as a hospital and as an organization referred to in section 170(b)(1)(A)(iii).

With the enactment of this statute, the Internal Revenue Service took the position that cooperative service organizations conducting activities which are not specified in section 301(e) were not entitled to tax-exempt treatment. The Service's position, however, was flatly rejected by a number of courts. Each of these cases involved cooperative organizations which provided laundry services to tax-exempt member hospitals—a service not specified in section 301(e). Furthermore, in each instance the Court ruled that the organization was entitled to tax-exempt status under section 301(c)(3).

In *United Hospital Services, Inc. v. United States*, 384 F.Supp. 776 (S.D.Ind.1974), the court held that section 501(e) was enacted to enlarge the category of charitable organizations under section 501(c)(3) to include certain cooperative hospital service organizations, and not to narrow or restrict the reach of section 501(c)(3) in any way. *Id.* at 781. Thus, the court held that section 501(e) and 501(c)(3) are entirely independent. This holding was followed in *Hospital Central Services Association v. United States*, 77–2 U.S.T.C. ¶ 9601, 40 A.F.T.R.2d 77–5646 (W.D.Wash.1977).

In *Metropolitan Detroit Area Hospital Services, Inc. v. United States*, 445 F.Supp. 857 (E.D.Mich.1978), the court held that the list of exempt organizations in section 501(e) is not exclusive and a cooperative laundry service could qualify under section 501(c)(3). *Id.* at 860.

Finally, in *Northern California Central Services, Inc. v. United States*, 591 F.2d 620 (Ct.Cl. 1979), the Court of Claims again rejected the government's contention that such cooperatives did not qualify for tax-

exempt status. The court stressed the fact that section 501(c)(3) was not modified with the enactment of section 501(e). *Id.* at 624. The court emphatically held that the interpretation of section 501(c)(3) as rendered by the Court of Claims in *Hospital Bureau* remains intact. *Id.*

Thus, four separate courts have held that section 501(e) is not the exclusive method for cooperative hospital service organizations to obtain exemptions. *See Northern California Central Services, Inc. v. United States, supra; Metropolitan Detroit Area Hospital Services, Inc. v. United States, supra; Hospital Central Services Association v. United States, supra; United Hospital Services, Inc. v. United States, supra.* Moreover, in five cases, courts have held that cooperative hospital service organizations qualify under section 501(c)(3) for tax-exemption. *See Northern California Central Services, Inc. v. United States, supra; Metropolitan Detroit Area Hospital Services, Inc. v. United States, supra; Hospital Central Services Association v. United States, supra; United Hospital Services, Inc. v. United States, supra; Hospital Bureau of Standards & Supplies v. United States, supra.* The government refuses to acquiesce in these decisions and contends that they have been erroneously decided. It is the position of the government that section 501(e) is the exclusive mechanism by which cooperative hospital organizations may obtain an exemption. Furthermore, the government contends that these cases can be distinguished on the ground that the plaintiff in this action qualifies under section 501(e).

III.   SECTION 501(c)(3) IS NOT THE EX-CLUSIVE MECHANISM BY WHICH COOPERATIVE SERVICE ORGANIZATIONS OBTAIN EXEMPTIONS.

The plaintiff qualifies under section 501(e) as a tax-exempt organization. The plaintiff seeks exemption under section 501(c)(3) in order to gain added flexibility. For example, if the plaintiff were to expand into the nursing home field it would be disqualified under section 501(e). In ad-

dition, section 501(e) requires the plaintiff to distribute its net earnings to its members within 8½ months of the close of each taxable year. Qualification under section 501(c)(3) would not involve such a requirement.

As the cases cited above indicate, there is no barrier in section 501(c)(3) to preclude the plaintiff from qualifying under that statute. The plaintiff is a corporation organized and operated exclusively for charitable purposes, and no part of its net earnings inures to the benefit of any private individual. The plaintiff does not qualify as a feeder organization because it is not engaged in carrying on a business for profit. Every case which has examined the issue has refused to follow the example in the regulations cited on page 12 *supra*. *See Northern California Central Services, Inc. v. United States, supra* at 627; *Metropolitan Detroit Area Hospital Services v. United States, supra* at 862–63; *United Hospital Services, Inc. v. United States, supra* at 782; *Hospital Bureau of Standards & Supplies v. United States, supra* at 563–64. Accordingly, the clear weight of authority holds that cooperative hospital organizations such as the plaintiff qualify under section 501(c)(3).

In support of its position, the government relies on two principles of statutory construction. First, a court should not interpret a statute in a manner that would result in the statute becoming totally without effect. That is, it is "untenable" to construe a statute so as to render it an "utter nullity," if there is a "plausible and consistent alternative construction" which gives the statute a sensible effect. *Federal Trade Commission v. Manager, Retail Credit Co.*, 515 F.2d 988, 994–95 (D.C.Cir.1975). Second, the government relies on the principle that the specific prevails over the general. *Citing MacEvoy Co. v. United States*, 322 U.S. 102, 107, 64 S.Ct. 890, 893, 88 L.Ed. 1163 (1944). According to the government, if an organization which qualifies under section 501(e) can also qualify under 501(c)(3), the former section would be rendered meaningless, since all section 501(e)— organizations could avoid that section's re-

strictions by qualifying under section 501(c)(3). Furthermore, it is the government's position that the fact that the plaintiff qualifies under section 501(e) makes that the specific statute to deal with the question of the plaintiff's exemption.

First, the Court shall follow the unanimous conclusion of the courts that have faced the issue—cooperative service organizations which cannot qualify under section 501(e) may still qualify under section 501(c)(3). Accepting that conclusion, the Court is faced with a dilemma. If the Court holds that organizations which qualify under section 501(e) may not qualify under 501(c)(3), such organizations can easily avoid the section 501(e) restrictions by altering their form and qualifying under section 501(c)(3). For example, if the plaintiff were to permit a nursing home to join its membership, its qualification would be lost under section 501(e). Then, pursuant to the laundry cases, it could qualify under section 501(c)(3). Such a result borders on the absurd. On the other hand, permitting organizations which qualify under section 501(e) to qualify under section 501(c)(3) would render section 501(e) essentially meaningless. However, in view of the unanimity of the laundry cases, the Court is constrained to hold that the latter alternative is the more acceptable option available to the Court. It would be absurd to permit only those organizations which fail to qualify under section 501(e) the advantages of section 501(c)(3). The Court can only conclude that this area is ripe for reexamination by the Congress.

An Order in accordance with this Memorandum Opinion shall be issued of even date herewith.