Maurice W. MILLER, Jr. and Lucinda C. Miller

v.

UNITED STATES of America, Defendant.

Civ. A. No. 80–151.

United States District Court, E.D. Kentucky.

May 21, 1985.

George F. Rabe, William C. Clay, Jr., Clay, Williamson & Rabe, Lexington, Ky., for plaintiffs.

U.S. Atty., Lexington, Ky., for defendant.

## MEMORANDUM OPINION

SCOTT REED, District Judge.

This matter is before the Court on the defendant's motion for summary judgment and on the plaintiffs' motion for partial summary judgment as to the statute in question in this action. The defendant has filed a memorandum and exhibits supporting its motion for summary judgment, to which the plaintiffs have responded.

A review of the record indicates that this action is appropriate for resolution by summary judgment, pursuant to FRCP 56, since it appears that there are no genuine issues of material fact in dispute. The factual background giving rise to this tax refund suit may be briefly summarized as follows:

1. In September of 1975, plaintiffs' breeding cattle were diagnosed as having brucellosis (commonly known as "bang's disease") and became unsuitable for breeding purposes.

2. Consequently, plaintiffs sold their breeding cattle for slaughter and recovered a gain of $42,708.50, which was treated as ordinary income on the plaintiffs' 1976 U.S. individual income tax return.

3. Subsequently, based on § 1033(f) of the Internal Revenue Code, the plaintiffs concluded that said proceeds of $42,708.50 from the sale of the diseased cattle should not have been recognized as ordinary income, and the plaintiffs filed an amended U.S. individual tax return for 1976, wherein they deferred recognition of the cattle proceeds of $42,708.50 and sought a refund of $27,713.00 from the Internal Revenue Service (hereinafter "IRS").

4. The IRS reviewed plaintiffs' amended tax return for 1976, and determined that brucellosis, the disease affecting plaintiffs' cattle, did not qualify for the special tax treatment set forth in § 1033(f) of the Internal Revenue Code, and denied plaintiffs' claim for a tax refund of $27,713.00, which precipitated the filing of this action.

Therefore, the Court is of the opinion that the resolution of this action turns on an interpretation of §§ 1033(a), (d) and (f) of the Internal Revenue Code (Title 26) concerning "involuntary conversions," as applied to the plaintiffs' situation.

In reviewing the aforementioned provisions of the Internal Revenue Code, the Court notes that § 1033(a) sets out the general rule that, to paraphrase, if property is compulsorily or involuntarily converted (as a result of its destruction in whole or in part, theft, seizure, requisition, condemnation or threat or imminence thereof) and converted into property similar or related in service or use to the property so converted, no gain shall be recognized by the taxpayer. Subsections (d) and (f) are expan-

sions of the general rule laid down in subsection (a).

Section 1033(d) provides that:

For purposes of this subtitle, if livestock are destroyed by or on account of disease, or are sold or exchanged because of disease, such destruction or such sale or exchange shall be treated as an involuntary conversion to which this section applies.

26 U.S.C. § 1033(f) addresses the tax treatment of livestock that has been exposed to environmental contamination and provides that:

For purposes of subsection (a), if, because of soil contamination or other environmental contamination, it is not feasible for the taxpayer to reinvest the proceeds from compulsorily or involuntarily converted livestock in property similar or related in use to the livestock so converted, other property (including real property) used for farming purposes shall be treated as property similar or related in service or use to the livestock so converted.

■ From a reading of subsections (a) and (d), it appears to the Court that if a taxpayer's livestock is sold or exchanged because of disease, an "involuntary conversion" has occurred, and the taxpayer may reinvest the proceeds from the sale of the diseased livestock into "similar property" (e.g., livestock) and defer recognition of any gain realized on the sale of the diseased livestock.

In construing subsections (a), (d) and (f) together, it seems that a taxpayer who has suffered an "involuntary conversion" of his livestock due to an environmental or soil contamination or pollution is afforded the opportunity to also invest the proceeds from such an "involuntary conversion" in other property used for farming purposes (including real property), rather than reinvesting in the proceeds in "similar property" (e.g., livestock), if such reinvestment in replacement livestock would not be feasible at the time for the taxpayer. For example, if the environmental or soil contamination could not be eliminated within the period of time in which the taxpayer had to reinvest the proceeds from the "involuntarily converted" livestock, as prescribed by the Internal Revenue Code, without having to recognize the proceeds as ordinary income, then the taxpayer could elect to invest said proceeds in other property used for farming purposes, in lieu of purchasing replacement livestock. In this particular situation, such investment in "other" property would be classified as an investment in "similar property," and the taxpayer would not have to recognize any gain on the "involuntary conversion" of the contaminated livestock.

The defendant's position is that § 1033(d) governs the situation where a taxpayer experiences an involuntary conversion of *diseased* cattle, and that § 1033(f) only applies to the situation where the involuntary conversion of the livestock is due to an environmental or soil contamination.

The defendant submits that when a § 1033(d) situation occurs, to defer recognition on the gain of the sale of the *diseased* cattle, the taxpayer must reinvest the proceeds in "similar property" (i.e., cattle), and that when a § 1033(f) occurs, to defer recognition on the gain of the sale of the cattle, the taxpayer may elect to reinvest the proceeds in "similar property" (i.e., cattle) or other property (including real property) to be used for farming purposes.

In support of its analysis and applicability of § 1033(d) and (f), the defendant delves into the legislative history of the two subsections and advises the Court that § 1033(d) has been a part of the Internal Revenue Code since 1954, whereas § 1033(f) is a relatively new provision in the Code, having been enacted in 1978.

The legislative history indicates that the final draft of § 1033(f) was quite different from the original proposal, which was introduced by Senator Griffin of Michigan and provided as follows:

If the proceeds from livestock which is compulsorily or involuntarily converted are reinvested in other property (including real property) to be used for farming

purposes, the property shall be treated as property similar or related in service or use to the livestock so converted. Amendment 4152, 124 Cong.Rec. 35298 (October 10, 1978).

The Court notes that if Congress had enacted § 1033(f) as it was originally proposed, the effect would have been to nullify § 1033(d), since the proposed § 1033(f) dealt with *all* compulsory or involuntary conversions, regardless of the reason, and gave the taxpayer the option to reinvest the proceeds therefrom in other property besides livestock.

Apparently, Congress recognized the consequences of enacting § 1033(f) as it was proposed, inasmuch as Congress redesigned § 1033(f) to allow for the discretionary reinvestment in other farm property *only* in cases where the involuntary conversion was due to environmental or soil contamination. This rationale is evidenced by the Conference Report, which stated:

> Conference agreement.—The conference agreement follows the Senate. amendment, except that gain realized from the involuntary conversion of livestock can be rolled over into other farming property *only if the conversion of the livestock was due to environmental contamination. In all other cases. [sic] the provisions of present law would continue to apply with respect to gain realized on the involuntary conversion of livestock.* (Emphasis supplied).

H.R.Rep. 95–1800, 95th Cong. 2nd Sess., page 291.

█ Since Congress did not repeal § 1033(d) at the time it enacted § 1033(f), the legislative history implies that Congress intended that only in cases of environmental contamination, rather than disease, would the taxpayer have the discretion to replace involuntarily converted livestock with other farm property.

The plaintiffs contend that brucellosis, the disease affecting their cattle, should be classified as an "other environmental contamination" under the purview of § 1033(f), since the bacteria or organisms which cause the disease are transmitted to the animal from its environment. Such a classification of "disease" would allow the plaintiffs to take advantage of the preferential tax treatment afforded by § 1033(f).

While it is without doubt that a disease may be transmitted to an animal through its environment, such a communicable disease is not tantamount to an "environmental contaminant." Plaintiffs' proposition that they are one and the same is too strained to hold water. If a disease were deemed to be an environmental contaminant, the end result would, for all intents and purposes, render § 1033(d) impotent. The Court is of the opinion that Congress intended for § 1033(d) to remain a viable part of the Internal Revenue Code.

As the defendant points out, the law is well settled that, as "a basic principle of statutory construction ..., a specific statute controls over a general provision ..., particularly when the two are interrelated and closely positioned...." *HCSC–Laundry v. United States,* 450 U.S. 1, 6, 101 S.Ct. 836, 839, 67 L.Ed.2d 1 (1980). Additionally, closely positioned parts of the same statute are to be construed harmoniously. C.D. Sands (ed.), *2A Sutherland Statutes and Statutory Construction,* Section 51.02 (4th Ed.1973).

In conclusion, in reviewing this record, the Court concludes that this matter is ripe for disposition by summary judgment, as all parties agree that there are no genuine issues of material fact. Furthermore, the Court is of the opinion that the defendant is entitled to summary judgment as a matter of law, and that plaintiffs' complaint must be dismissed.

A separate Order in conformity with the Court's opinion shall be entered in conjunction with this memorandum opinion.