Ronald L. STOWMAN, Appellant,

v.

CARLSON COMPANIES, INC., Respondent.

No. C3–88–916.

Court of Appeals of Minnesota.

Oct. 25, 1988.

Review Denied Jan. 13, 1989.

John E. Thomas, St. Paul, for appellant.

R. Scott Davies, Gregory J. Stenmoe, Michael Thomas Miller, Briggs and Morgan, Minneapolis, for respondent.

Heard, considered and decided by FOLEY, P.J., and RANDALL and LESLIE,* JJ.

## OPINION

FOLEY, Judge.

This appeal is from a summary judgment dismissing appellant Ronald L. Stowman's claim against respondent Carlson Companies, Inc. for fraudulently inducing his employment, negligently hiring him away from his previous employment and breach of an implied covenant of good faith and fair dealing. We affirm.

## FACTS

On appeal, it is the responsibility of the parties to secure a transcript in order for us to conduct a thorough examination of the proceedings. Without one, our review is limited to only those matters which appear undisputed in the record. Here, it is difficult to examine the accuracy of the facts without a transcript of the depositions. *See Noltimier v. Noltimier,* 280 Minn. 28, 157 N.W.2d 530 (1968); Minn.R. Civ.App.P. 110.02, subd. 1(a).

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

We see the facts as follows. Stowman had been employed by Canteen Company for approximately 25 years as vice-president of operations. While at Canteen, Stowman heard of a job opportunity with the A. Weisman Co., a wholly owned subsidiary of Carlson Companies, and arranged an interview. Paul Weisman then informed Stowman that Carlson Companies wanted to interview him.

Stowman met with Dee Kemnitz who was personnel director for the Carlson Companies. The parties' versions of Kemnitz' remarks are contrary. Without testimony or depositions to review, we cannot ascertain the veracity of the allegations which each party makes with reference to Kemnitz' statements.

Stowman began work at Weisman on January 29, 1981. On May 18, 1981, Carlson Companies management told its employees that Weisman had been sold to Minter Brothers effective May 30, 1981. Stowman then began work for Minter Brothers. On June 30, 1981, Minter Brothers sold the company to William Weisman, and at that time Stowman was terminated. Stowman began a lawsuit against Carlson Companies four years later.

The trial court found that the facts had clearly established that the job that was advertised, interviewed for, and subsequently accepted was a position with Weisman. The trial court further found that there was no written employment contract, that Stowman was an at-will employee, that the position was not guaranteed for any specific length of time, and that the position was with Weisman, and not with Carlson Companies. Accordingly, the trial court granted summary judgment and concluded that Stowman's claims were without merit and barred by the statute of limitations.

## ISSUES

1. Did the trial court err in concluding that there was no fraudulent inducement in the hiring of Stowman?

2. Did the trial court err in concluding that Stowman's claims were barred by the two-year statute of limitations in Minn. Stat. § 541.07(5)?

3. Did the trial court err in concluding that Stowman's claims were based on contract and not tort?

4. Did the trial court err in concluding that Stowman failed to establish a covenant of good faith and fair dealing when he was relying on general policy statements?

## ANALYSIS

*Standard of Review*

A motion for summary judgment will be granted under Minn.R.Civ.P. 56.03 if:

> The pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law.

On appeal from summary judgment, it is the function of the appellate court to determine whether genuine issues of material fact exist and whether the trial court erred in its application of the law. *Hunt v. IBM Mid America Employees Federal Credit Union*, 384 N.W.2d 853, 855 (Minn.1986).

1. Stowman alleges two instances of fraudulent inducement. First, he claims that he justifiably relied on Curt Carlson's reputation in assuming that his employment was guaranteed. Second, he claims that Carlson Companies breached a duty of disclosure by failing to reveal its intentions to sell Weisman.

To establish fraudulent inducement, Stowman must establish that Carlson Companies falsely represented or omitted a material fact that was susceptible of knowledge with the intent of inducing him to act. *Davis v. Re–Trac Manufacturing Corp.*, 276 Minn. 116, 149 N.W.2d 37 (1967). Further, Stowman must have justifiably relied on the representation or omission and suffered damages as a proximate result of that reliance. *Id.* at 117, 149 N.W.2d at 38–39.

*Inducement Based on Carlson's Reputation*

■ Stowman claims that he was induced to accept employment with Weisman

based on the favorable reputation of Carlson Companies and Curt Carlson. Stowman cites no authority that raises the reliance he placed on Curt Carlson's reputation to the level of a fraudulent inducement. These facts, standing alone, do not give Stowman a basis to claim fraudulent inducement.

Stowman also claims justifiable reliance on statements in the employee handbook. The statement he claims reliance upon is:

> By so doing we create increasing thousands of exciting and rewarding career opportunitites for all of you who have chosen to be part of our dynamic future.

This statement is only a general policy statement upon which Carlson Companies cannot be held liable. *See Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983).

*Duty to Disclose Possible Sale*

Stowman next claims that he would not have accepted employment if he had known that Carlson Companies was going to sell Weisman. For nondisclosure to constitute fraud, there must exist a legal or equitable duty to communicate the information. *Richfield Bank & Trust Co. v. Sjogren,* 309 Minn. 362, 365, 244 N.W.2d 648, 650 (1976).

■ Minnesota has not placed a duty upon a potential employer to disclose to a job applicant confidential negotiations to sell its company. In the field of securities law, it has been determined that there is *no* duty to disclose current or future plans to sell a company that are contingent or indefinite. *See Warner Communications, Inc. v. Murdoch,* 581 F.Supp. 1482, 1491 (D.Del. 1984) ("it is well established that the federal securities laws do not impose a duty to disclose information regarding current or future plans that are *uncertain* and *contingent* in nature. * * * This principle is grounded in the concern that it might be just as misleading to investors to disclose contingent plans as it might be to fail to disclose such plans." (emphasis added)). We hold that confidentiality must be maintained in the uncompleted negotiations for the sale of a subsidiary company which will undoubtedly involve matters of federal regulations. Carlson Companies did not have a duty to disclose the possible sale of the company or the negotiations of the sale to Stowman.

Kurt Retzler, Vice President of Acquisitions and Development of Carlson Companies, stated in his affidavit that it is the policy of Carlson Companies not to disclose negotiations to buy and sell companies and that

> any negotiations that we enter into are highly confidential and any disclosure to a third party would have a chilling effect on our ability to conduct such transactions.

Retzler also commented that there had been a number of discussions regarding the sale and that most of them were unproductive and discontinued. He said that at the time Stowman was hired, no decision to sell the company had been made.

Accordingly, there was no fraudulent inducement in Stowman's hiring, and the law does not provide relief to an employee who expected job security based on the reputation of the company or on the personal reputation of the company's owner.

■ 2. The Minnesota Supreme Court has held that "discharge from employment is actionable, if at all, because it constitutes a breach of the employment contract," and all damages arising out of the employment relationship are subject to the two-year statute of limitations set forth in Minn. Stat. § 541.07(5) (1986). *Portlance v. Golden Valley State Bank,* 405 N.W.2d 240, 243 (Minn.1987).

The trial court held that Stowman's claims of fraudulent inducement were unsubstantiated, and that the two-year statute of limitations applied because Stowman's termination was in excess of two years. We agree that the trial court's application of the law under the *Portlance* standard is correct.

3. Stowman insists that his claims are based on tort and not contract. He claims that he was negligently hired away from his former employment. Such a claim has no basis in fact in this case.

■ Here, Stowman was an at-will employee. Cases involving at-will employment are actionable only on the basis of contract law. *See Portlance,* 405 N.W.2d at 243. Tort principles will not be applied unless the employee can demonstrate that the employer contravened some clear mandate of public policy recognized either judicially or legislatively. *See Phipps v. Clark Oil & Refining Corp.,* 396 N.W.2d 588, 592 (Minn.Ct.App.1986), *aff'd* 408 N.W.2d 569 (Minn.1987). Here, Stowman has not raised any public policy issue. Accordingly, his claims are based on contract law.

■ Likewise, there is no factual basis for a claim of negligence regarding Stowman's hiring process. Stowman claims that the fraud arose out of the negotiations that he had with Carlson Companies prior to the employment agreement. Stowman relies on *Bernoudy v. Dura–Bond Concrete Restoration, Inc.,* 828 F.2d 1316 (8th Cir.1987), and quotes from that case:

> The fraud, therefore, does not arise out of the contract; it arises out of the negotiations prior to the employment agreement.

*Id.* at 1318. Stowman's reliance on *Bernoudy* is misplaced. In that case, the company made the following express representation regarding guaranteed eight-year employment:

> At the point the vacation policy was discussed, Alexander turned to her and David Bernoudy and said, 'And, of course, you will be employed for not less than eight years.' She then testified that at this point Lee Popovich nodded his head in agreement and that they (the Bernoudys) said 'yes'.

*Id.* at 1317.

Here, no such promise was made. In fact, the duration of Stowman's employment was never discussed. He has failed to establish that a duty was owed to him under negligence principles.

4. The trial court held that there was no covenant of good faith and fair dealing created in this employment relationship. Stowman claims that the covenant existed based on the employee handbook, yet he does not claim that the handbook created an employment contract between the parties. He instead argues that a covenant of good faith and fair dealing was created through the parties' employment negotiations.

■ We disagree. The Minnesota Supreme Court has held that there is no implied covenant of good faith and fair dealing. *Hunt v. IBM Mid America Employees Federal Credit Union,* 384 N.W.2d 853, 858 (Minn.1986). There, the court stated that for sound policy reasons, a majority of our sister jurisdictions have likewise rejected the implication of a covenant of good faith termination. The supreme court cited the Hawaii Supreme Court, which stated that

> to imply into each employment contract a duty to terminate in good faith would seem to subject each discharge to judicial incursions into the amorphous concept of bad faith. We are not persuaded that protection of employees requires such an intrusion on the employment relationship or such an imposition on the courts.

*Parnar v. Americana Hotels, Inc.,* 65 Hawaii 370, 652 P.2d 625, 629 (1982). Similarly, the Wisconsin Supreme Court has stated:

> We refuse to impose a duty to terminate in good faith into employment contracts. * * * [W]e feel it unnecessary and unwarranted for the courts to become arbiters of any termination that may have a tinge of bad faith attached. Imposing a good faith duty to terminate would unduly restrict an employer's discretion in managing the work force.

*Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 569, 335 N.W.2d 834, 838 (1983). We agree with the reasoning of these two decisions, and will not impose a covenant of good faith here.

■ Similarly, there is no factual basis on which to base a claim for an express covenant in fact. Stowman's only evidence consists of a general statement in the manual given to him by Weisman. We have held that such general policy statements do not create such a covenant. *Simonson v. Meader Distribution Co.,* 413 N.W.2d 146,

148 (Minn.Ct.App.1987). Significant to decision here is the fact that Weisman was sold to Minter Brothers who later sold to William Weisman at which time Stowman was terminated. In this sequence of events, it cannot be soundly argued that Carlson Companies had some duty to Stowman.

Here summary judgment was properly granted. The statute of limitations bars this action, and Carlson Companies was therefore entitled to judgment as a matter of law. The trial court's application of the law was correct.

### DECISION

Affirmed.