# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 00-3924

———————

John Kartheiser,

        Appellant,

    vs.

American National Can Company,

        Appellee.

Appeal from the United States
District Court for the Southern
District of Iowa

———————

Submitted: June 15, 2001
Filed: November 29, 2001

———————

Before LOKEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
BATAILLON[1], District Judge.

———————

BATAILLON, District Judge.

John Kartheiser brought suit against his former employer, American National Can, when it refused to pay him for overtime work under its supplemental pay program. The jury returned a verdict in Kartheiser's favor in the amount of $15,603.37, but the trial court granted American National Can's motion for judgment as a matter of law and set aside the verdict. It found that Kartheiser had not

---

[1]The Honorable Joseph F. Bataillon, United States District Court for the District of Nebraska, sitting by designation.

documented and submitted his claimed overtime hours as required by American National Can's program and thus was not eligible for overtime compensation. Because we find the evidence supports a finding that Kartheiser was eligible for such compensation, we reverse and remand.

Kartheiser brought his action under the Iowa Wage Payment Collection Law, Iowa Code Ch. 91A. The statute permits an employee to sue for compensation for labor or services, "whether determined on a time, task, piece, commission, or other basis of calculation." Iowa Code § 91A.2(7)(a). The purpose of the statute is uncomplicated and direct: "to facilitate collection of wages by employees." *Educational Tech., Ltd. v. Reinhard*, 2001 WL 488088, *8 (Iowa Ct. App. 2001). The law is remedial in nature and is meant to be liberally construed. *See Hornby v. Iowa*, 559 N.W.2d 23, 26 (Iowa 1997).

The evidence adduced at trial shows that American National Can devised a company-wide "Exempt Employee[2] Overtime Program" ("the overtime program") to ensure that salaried supervisors would not earn less than the hourly employees they supervised during overtime. The program recognized that a "normal amount of overtime work [was] inherent in any exempt supervisory position," but provided that "eligible employees **will** receive supplemental compensation, in addition to base salary" when required to directly supervise hourly employees during 1) "scheduled work beyond the normal daily or weekly schedule" if approved by the plant manager in advance, or 2) "bona fide emergencies," if approved by the plant manager retroactively. (Emphasis added.)

---

[2]The Fair Labor Standards Act, 29 U.S.C. § 213(a)(1), exempts executive, administrative, and professional employees from the overtime pay requirements imposed on employers with regard to other employees. The parties did not dispute Kartheiser's exempt status.

In October 1990, Kartheiser was promoted from a "front-line" management position to a "second-level" management position at American National Can's Des Moines plant. He received a 9% pay increase with the promotion, but was no longer eligible for supplemental compensation for overtime since he no longer directly supervised hourly employees.

In November 1993, American National Can had a plant-wide reduction in force. One of the two front-line supervisors whom Kartheiser supervised was terminated; the other was reassigned to a different position under Kartheiser. Kartheiser therefore once again took on some front-line duties, including the supervision of hourly employees, in addition to his duties as a second-level manager. Believing he was again eligible for additional compensation, Kartheiser requested overtime pay. On at least two occasions, the plant manager, David Kowalski, checked into the possibility of securing additional compensation for Kartheiser, but American National Can refused the requests notwithstanding Kartheiser's assertion that a similarly situated manager in Wisconsin was being paid overtime. Kowalski informed Kartheiser that overtime was paid on a plant-by-plant basis and that management employees at his level and higher were ineligible for supplemental compensation. About the time Kartheiser first approached Kowalski on the matter, moreover, Kowalski instituted stricter controls on overtime for salaried employees, including a requirement that no overtime could be paid without his direct approval.

Kartheiser nevertheless continued to record privately his overtime hours after the reduction in force until he resigned in August 1996. Kartheiser did not submit these time records to American National Can for review and payment until shortly before he resigned, believing the gesture would be futile and might even jeopardize his job.

We review de novo the district court's decision to grant a motion for judgment as a matter of law. *Oriental Trading Co. v. Firetti*, 236 F.3d 938, 945 (8th Cir. 2001).

The court must "assume as proven all facts that the nonmoving party's evidence tended to show, give [the nonmoving party] the benefit of all reasonable inferences, and assume that all conflicts in the evidence were resolved in [the nonmoving party's] favor." *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 (8th Cir. 2000). The court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "A jury verdict should not be overturned unless there is a complete absence of facts to allow a jury to reach its conclusion." *Athey v. Farmers Ins. Exchange*, 234 F.3d 357, 362 (8th Cir. 2000).

Reviewing the record under that standard, we find that the jury verdict is proper under any of several scenarios, and the trial court thus erred in granting American National Can's motion for judgment as a matter of law. American National Can's program applied to supervisory employees who were otherwise exempt from receiving compensation for performing qualifying overtime duties. The ultimate issues for the jury were therefore: 1) whether Kartheiser was eligible under the overtime program; and 2) whether the type of work Kartheiser performed was covered by the overtime program. American National Can did not dispute that after the reduction in force Kartheiser worked overtime hours, supervised hourly employees, and repeatedly declared himself eligible for compensation under the overtime program. It simply took the position that as a second-level supervisor, Kartheiser was not eligible for any additional compensation no matter how many overtime hours he worked, no matter what his responsibilities were, no matter how many overtime pay forms he submitted – or did not submit – for Kowalski's approval. Because of American National Can's actions, it was reasonable for Kartheiser to conclude that it would be futile to keep submitting overtime pay forms since Kowalski refused to approve his overtime hours.

The jury was entitled to find that Kartheiser was eligible for compensation for overtime hours under the language of American National Can's overtime program. After the reduction in force, American National Can required Kartheiser to perform

4

front-line supervisory duties that qualified under the overtime program during scheduled and emergency overtime. Based upon the testimony and the pay records in evidence the jury was entitled to find that Kartheiser was indeed eligible under the overtime program, and then to award him the amount they attributed to the performance of qualifying overtime work.

The jury was also free to conclude from the language of the overtime program, as well as from American National Can's actions, that Kartheiser was entitled to additional compensation without complying with Kawolski's overtime protocol, particularly if the jury also found that Kartheiser's continued submission of any paperwork under the protocol would have jeopardized his job or would have been futile. In light of the statutory scheme designed to compensate employees for work performed, the jury was entitled to believe that there was no requirement under the overtime program to submit the claims at any particular time and in any particular form. The evidence shows that after the reduction in force, Kowalski knew Kartheiser was working overtime, yet neither Kowalski nor any other American National Can supervisor told Kartheiser to stop working those hours. The jury could reasonably find that American National Can's actions amounted to tacit approval of Kartheiser's overtime, and that American National Can failed to pay him for required work.

The jury's award does no more than pay Kartheiser for the eligible work he performed, thus making it consistent with the policy behind the Iowa Wage Payment Collection Law. The jury's finding that Kartheiser was entitled to collect supplemental compensation under the program for qualifying overtime work – although not in strict compliance with Kowalski's protocol – does not frustrate the purpose of the act. The jury's award of $15,603.37 indicates that it resolved the "good faith difference of opinion" about whether Kartheiser was entitled to collect overtime wages in Kartheiser's favor.

Accordingly, we reverse the grant of judgment as a matter of law and remand this matter to the trial court with directions to reinstate the jury's verdict.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT