# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 02-3897 and 03-1167

_____

Debra Shaw,                                  *
                                             *
          Plaintiff-Appellee,                *
                                             *   Appeals from the United States
     v.                                      *   District Court for the
                                             *   Southern District of Iowa.
The McFarland Clinic, P.C.,                  *
                                             *
          Defendant-Appellant.               *

_____

Submitted:  December 18, 2003

Filed:  April 13, 2004

_____

Before RILEY, LAY, and HEANEY, Circuit Judges.

_____

LAY, Circuit Judge.

Debra Shaw brought the present Employee Retirement Income Security Act of 1974 ("ERISA") action against her employer seeking to recover benefits she alleged were due her under a health benefit plan. The district court[1] granted summary judgment in favor of Shaw, and we affirm.

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

# I. BACKGROUND

Debra Shaw is Iowa's last known polio victim. Shaw contracted the infectious disease at nineteen months of age in June of 1959, which inhibited the normal growth of the muscles in her left leg. At a young age, Shaw's left calf muscle was so severely deformed and undersized that it was unable to support any weight, causing her to resort to the assistance of a full leg brace in order to walk. Throughout the course of her life, Shaw has undergone various medical procedures in an attempt to alleviate her condition, each with only limited success. Although she is presently able to walk unaided, Shaw's balance and gait are still hampered, as her left leg is slightly shorter than her right. Shaw suffers from persistent physical pain in her knee, ankle, and lower back, due to the inability of her left calf to support significant weight. Shaw's deformity also serves as a constant visual reminder of her affliction, resulting in considerable emotional distress.

Sometime in September of 1997, Shaw was seen in consultation by Dr. Marie E. Montag regarding the possibility of reconstructive plastic surgery on her left calf. Dr. Montag determined that a viable treatment option existed, known as tissue expander reconstruction surgery, which would add weight and definition to Shaw's calf and thereby reduce her physical pain. Excited by the prospect of living a normal and healthy life, Shaw began the process of obtaining the preauthorization for the surgery from her employer, the McFarland Clinic, P.C. ("McFarland").

McFarland is one of the largest multi-speciality clinics in Iowa, offering a wide array of healthcare services to residents of over thirty communities located in central Iowa. To provide its employees with healthcare coverage, McFarland sponsors the McFarland Clinic, P.C. Health Benefit Plan (the "Plan"), a self-funded health benefit plan covering any expenses incurred by both an employee and his or her dependents for medically necessary services. Before an employee undergoes any hospitalization or medical procedure, however, he or she first must obtain preauthorization from

McFarland.[2]    According to the terms of the Plan, "[p]reauthorization allows [McFarland] to evaluate the medical appropriateness of services and provides [the employee] with assurance that the hospitalization or procedure is medically necessary and will be covered . . . ."  Jt. App. at 121.

On September 24, 1997, Dr. Montag, on Shaw's behalf, wrote to McFarland requesting preauthorization for tissue expander reconstruction surgery.  On December 15, 1997, McFarland denied Shaw's request on the basis that the requested procedure was "cosmetic surgery," and therefore was not covered by the Plan.  Over the next several months, Shaw and several other physicians wrote to McFarland, urging it to reconsider the denial of preauthorization.  By letter dated January 9, 1998, Dr. Montag stated:

> I do concede that placement of calf implants would indeed improve [Shaw's] cosmetic appearance but this increased weight and volume of the affected leg would also improve her balance and thereby cause an improvement in her gait overall.  Ms. Shaw has had problems with pain in the left ankle and knee as well.  These are quite probably due to abnormal stresses on these areas due to her asymmetric balance and these symptoms also could be helped by placement of prosthetic implants.

Id. at 101.

On January 13, 1998, two of McFarland's own physicians, Diane Cardwell, P.A., and Terry McGeeney, M.D., opined that the reconstructive surgery should be

---

[2]As a purely technical matter, an employee submits a claim for preauthorization not to McFarland, but instead to Health Alliance Medical Plans ("HAMP"), a third-party plan administrator to whom McFarland has delegated a majority of its duties.  Nevertheless, because McFarland is responsible for the actions of its agent, we refer to correspondence sent to, and actions taken by, HAMP as though McFarland was the primary actor.

covered under the Plan, insofar as it provided coverage for "cosmetic implant[s] secondary to a medical condition," id. at 102, such as breast implants following a mastectomy. On January 23, 1998, and again on April 2, 1998, Shaw made impassioned pleas for preauthorization. Each of these requests fell on deaf ears. On May 21, 1998, McFarland finally denied Shaw's request for preauthorization, forcing Shaw to pay for the reconstructive surgery out of her own pocket.

On May 25, 2001, Shaw commenced the instant action under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), alleging that McFarland's denial of preauthorization was an abuse of discretion insofar as tissue expander reconstruction surgery was covered under the terms of the Plan. In the alternative, Shaw's complaint alleged that McFarland's denial of preauthorization was a breach of its fiduciary duty owed to her as an individual beneficiary of the Plan. On cross-motions for summary judgment, the district court entered judgment in favor of Shaw. See Shaw v. McFarland Clinic, P.C., 231 F. Supp. 2d 924 (S.D. Iowa 2002). The district court found that McFarland abused its discretion as plan administrator in denying Shaw's request for preauthorization, awarding her $10,979.00 plus interest accrued since May 21, 1998. The district court later awarded Shaw attorney fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

On appeal, McFarland argues that the district court erred in awarding Shaw any relief, including attorney fees and costs, insofar as her action is barred by the statute of limitations.[3]

_____

[3]In its notice of appeal, McFarland also raised issues going to the merits of Shaw's claim, arguing that the district court erred in finding that it had abused its discretion as plan administrator in denying Shaw's claim for benefits. See Shaw, 231 F. Supp. 2d at 936-42. However, on appeal McFarland explicitly acknowledged that while it "continues to believe that [the issues going to the merits] present grounds for the reversal of the district court's judgment, it has chosen not to pursue those issues." Appellant's Br. at 2. Even if McFarland had not made such an acknowledgment,

-4-

## II. ANALYSIS

The parties do not dispute that Shaw's cause of action for abuse of discretion accrued on May 21, 1998, the date on which McFarland finally denied her request for preauthorization. See Union Pac. R.R. Co. v. Beckham, 138 F.3d 325, 330 (8th Cir. 1998) ("[T]he general rule in an ERISA action is that a cause of action accrues after a claim for benefits has been made and has been formally denied."). Instead, the parties' dispute on appeal focuses on whether Shaw commenced her action in a timely manner. Since ERISA does not contain its own statute of limitations governing actions to recover benefits, we must look to Iowa law and borrow the most analogous statute of limitations. See Johnson v. State Mut. Life Assurance Co. of Am., 942 F.2d 1260, 1262 (8th Cir. 1991). Because it arises out of an agreement entered into with McFarland, Shaw's action is most analogous to a cause of action for breach of contract. See Adamson v. Armco, Inc., 44 F.3d 650, 652 (8th Cir. 1995) ("At least in this circuit, it is settled that a claim for ERISA benefits is characterized as a contract action for statute of limitations purposes.").[4]

---

however, we doubt whether the claim would have been properly presented for our review. See Hays v. Hoffman, 325 F.3d 982, 986 n.2 (8th Cir. 2003) (noting that issues neither argued in a brief nor stated in its statement of issues are not preserved for appellate review).

[4]In all due respect, the dissent is misleading. The dissent argues that simply because "Shaw clearly has not alleged or argued an ordinary breach of contract action," post, at 12, the Iowa statute of limitations for a breach of contract is inapplicable. We respectfully disagree. As we have already stated, since ERISA does not contain its own statute of limitations, we must borrow the *most analogous* statute of limitations from Iowa law. Our discussion regarding breach of contract is directly relevant to this task. The dissent also overrides Iowa law, which we have cited, see post, at 10, that when a court has to choose between competing statutes of limitation, any doubt will be resolved in favor of the statute containing the longer period.

The present difficulty arises from the fact that Iowa law provides two separate statutes of limitation applicable to a contract action, one general and the other specific. As a general matter, a claim brought under ERISA relating to a contract of insurance is governed by a ten-year statute of limitations. See Iowa Code § 614.1(5); see also Hamm v. Allied Mut. Ins. Co., 612 N.W.2d 775, 783-84 (Iowa 2000). If, however, the contract arises out of an employment relationship and an employee seeks to recover wages from her employer, it is subject to a two-year statute of limitations. See Iowa Code § 614.1(8).

In determining which of these two periods of limitation to apply, we may inquire as to how Iowa law would characterize Shaw's action. See Johnson, 942 F.2d at 1262; cf. United Auto. Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 706 (1966) (noting that "there is no reason to reject the characterization that state law would impose unless [it] is unreasonable or otherwise inconsistent with national labor policy"). According to McFarland, Shaw's action is one that Iowa law would treat as an action for wages under the Iowa Wage Payment Collection Act ("IWPCA"), Iowa Code § 91A *et seq.*, and is therefore subject to a two-year statute of limitations under Iowa Code § 614.1(8). Because Shaw filed suit on May 25, 2001, three years after her cause of action accrued, McFarland asserts that it is time-barred.

Since its enactment, Iowa courts have repeatedly stated that the purpose of the IWPCA is "to facilitate the public policy of allowing employees to collect wages owed to them by their employers." Hornby v. State, 559 N.W.2d 23, 26 (Iowa 1997). Toward this end, and taking into consideration the highly evolving nature of employee compensation, the IWPCA sets forth an expansive definition of "wages," encompassing much more than the regularly-issued paycheck. The IWPCA provides in relevant part:

"Wages" means compensation owed by an employer for:

. . .

> c. Any payments to the employee or to a fund for the benefit of the employee, including but not limited to payments for medical, health, hospital, welfare, pension, or profit-sharing, which are due an employee under an agreement with the employer or under a policy of the employer. The assets of an employee in a fund for the benefit of the employee, whether such assets were originally paid into the fund by an employer or employee, are not wages.

> d. Expenses incurred and recoverable under a health benefit plan.

Iowa Code §§ 91A.2(7)(c) and (d). If the benefits Shaw presently seeks to recover may be said to fit comfortably within one of these two statutory definitions of wages, McFarland would be correct to assert that Shaw's action is time-barred. We believe, however, that neither definition is applicable under the facts presented on appeal.[5]

Section 91A.2(7)(c), by its plain language, is inapplicable to Shaw's action. The benefits that she seeks to recover do not constitute "payments to the employee," because even assuming that McFarland had granted preauthorization, any payment for Shaw's medical expenses would have been made directly to her healthcare provider.[6]

---

[5]The dissent basically adopts McFarland's argument on appeal. However, as the district court succinctly observed: "Although McFarland's argument is persuasive at first glance, it fails under close scrutiny." Shaw, 231 F. Supp. 2d at 933. The same may be said about the dissent.

[6]McFarland and the dissent argue that our decision in Mead v. Intermec Technologies Corp., 271 F.3d 715 (8th Cir. 2001), stands for the proposition that the most analogous statute of limitations for actions brought under 29 U.S.C. § 1132(a)(1)(B) is *always* the two-year period prescribed in Iowa Code § 614.1(8). We respectfully submit Mead did not announce the broad proposition that McFarland and the dissent now propose. Rather, Mead held only that an employee's claim for short-term disability payments was one for wages under the IWPCA, and therefore governed by a two-year statute of limitations. Unlike the benefits presently at issue,

-7-

In addition, the benefits do not constitute payments to a "fund for the benefit of the employee." We submit that this reference was meant to encompass only those funds in which the employee could be said to have an interest separate and distinct from other employees, *i.e.*, a fund for retirement, pension, or profit-sharing. See, e.g., Phipps v. IASD Health Servs. Corp., 558 N.W.2d 198 (Iowa 1997) (holding that an employee's individual share in the revenue of a company, due under a policy of the employer, constituted wages within the meaning of § 91A.2(7)(c)). In this case, there is no evidence that McFarland maintained *individual* healthcare funds for each of its employees that could be drawn upon by that employee. Finally, § 91A.2(7)(c) does not apply because § 91A.2(7)(d) sets forth a definition of wages specifically

---

short-term disability benefits are paid directly to the employee claiming entitlement to them, and therefore fit easily within the definition of wages provided in § 91A.2(7)(c). See also Hornby, 559 N.W.2d at 26 (holding that payments made directly to an employee for long-term disability benefits are wages within the meaning of § 91A.2(7)(c)).

It is also important to note that Mead was decided on several alternate grounds. First, it was determined that Mead was not eligible for short-term disability benefits. Mead, 271 F.3d at 717. Second, when Mead left the company, he entered into a severance agreement in which he waived all existing claims against the company. Id. Our statement that Mead's action was barred by the IWPCA's statute of limitations was clearly an afterthought, and we gave no reasons for this interpretation of the IWPCA. Indeed, our entire analysis of the issue consisted of the following: "The District Court found that Mead's claim fell within the Iowa Wage Payment Collection Act and was barred by the two-year statute of limitations. We agree." Id. (citation omitted).

The dissent also refers to this court's opinion in Adamson . We do not believe that Adamson is controlling. First, Adamson involved Minnesota, not Iowa, law; and second, it did not involve a question of whether an individual employee was entitled to a specific benefit under the plan. Rather, Adamson dealt with the termination of a benefit plan that affected all employees, a question clearly covered by the terms of the Minnesota wage statute.

-8-

addressing the type of benefit McFarland claims to be at issue: compensation due under the terms of a "health benefit plan."[7] See HCSC-Laundry v. United States, 450 U.S. 1, 6 (1981) (noting that "it is a basic principle of statutory construction that a specific statute . . . controls over a general provision . . . , particularly when the two are interrelated and closely positioned").

McFarland also claims that Shaw's action is one for wages, as that term is defined in § 91A.2(7)(d). This presents a closer question. Although § 91A.2(7)(d) defines wages as "[e]xpenses incurred and recoverable under a health benefit plan," this definition is similarly inapplicable to the present case. Like the district court, we believe the IWPCA only treats as wages those "[e]xpenses by the employee which are *authorized by the employer* and incurred by the employee." Iowa Code § 91A.3(6) (emphasis added). Thus, for a medical expense to constitute wages within the meaning of § 91A.2(7)(d), it must be one that the employee has been authorized by her employer to incur. See Shaw, 231 F. Supp. 2d at 934 ("Thus, expenses under a health benefit plan are not wages unless they are both incurred and recoverable[,] *i.e.*[,] authorized and incurred."). This is not true here, as McFarland explicitly refused to grant preauthorization for Shaw's surgery.[8]

---

[7]The IWPCA further defines a "health benefit plan" as "a plan or agreement provided by an employer for employees for the provision of or payment for care and treatment of sickness or injury." Iowa Code § 91A.2(5).

[8]The dissent reasons that this reading "renders section 91A.2(7)(d) virtually meaningless," post, at 14. The dissent somehow construes our holding that an employee such as Shaw has no cause of action under the IWPCA as working some disadvantage to her. Not true. As the result we reach demonstrates, an employee could do exactly what Shaw attempts to do in this action—bring an ERISA action against the plan administrator for failure to grant preauthorization for a medical procedure. Such an action would be most analogous to one alleging a breach of contract, and thus governed by the ten-year statute of limitations. Furthermore, the dissent's argument concerning the breadth of the IWPCA's coverage of healthcare expenses is best-suited for the Iowa legislature, not this court. See City of New

In short, because Shaw's claim against McFarland does not fit within either of the aforementioned definitions of wages, she has no cause of action under the IWPCA. This being the case, its two-year statute of limitations is inapplicable to limit her ERISA cause of action. Instead, Shaw's action against McFarland "most closely resembles an insured party's claim against his insurer for denial of coverage and breach of contract," id., and is governed by a ten-year statute of limitations. This result is consistent with the general principle of Iowa law that when a court has to choose between competing statutes of limitation, any doubt as to which to apply "will generally be resolved in favor of the application of the statute containing the longest limitation." Halverson v. Lincoln Commodities, Inc., 297 N.W.2d 518, 522 (Iowa 1980) (internal citation and quotation omitted).

Finally, we note that McFarland has not appealed the district court's award of damages to Shaw nor its finding that McFarland abused its discretion by denying preauthorization. See supra n.3. Thus, these issues are not presented for our review. Our holding that Shaw's action is not time-barred disposes of McFarland's claim that Shaw was not entitled to costs and attorney fees, as McFarland's argument to the contrary was premised upon its view that Shaw's action was untimely. Furthermore, our affirmance of the district court on Shaw's abuse of discretion theory makes it unnecessary for us to reach the issue of her recovery on an alternative theory of breach of fiduciary duty. Nevertheless, to the extent the district court's award of damages may have alternatively been premised on its determination that McFarland acted in bad

---

Orleans v. Dukes, 427 U.S. 297, 303 (1976) ("In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines . . . ."). The plain language and overall scheme of the IWPCA evinces an intent on the part of the Iowa legislature to address only expenses that are authorized by an employer. See Iowa Code § 91A.3(6) (providing for reimbursement of expenses that are "authorized by the employer"); id. § 91A.7 (addressing disputes concerning the amount of "expense reimbursement due"); id. § 91A.8 (permitting the recovery of damages for failure to "reimburse expenses pursuant to section 91A.3").

faith and breached a fiduciary duty owed to Shaw, we part company with the district court. Needless to say, the Supreme Court has made clear that an individual generally may not recover monetary damages based upon a plan administrator's breach of fiduciary duty, see Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 144 (1985) ("[T]he entire text of [§ 1109] persuades us that Congress did not intend that section to authorize any relief except for the plan itself."), especially when another enforcement provision of ERISA provides an adequate remedy. See Varity Corp. v. Howe, 516 U.S. 489, 515 (1996).

## III. CONCLUSION

Based on the foregoing, we hold that an employee's action alleging the improper denial of preauthorization for health benefits by her employer is most analogous under Iowa law to an action for breach of a written contract. Because Shaw instituted the present action against McFarland well within the applicable ten-year statute of limitations, the judgment of the district court is AFFIRMED.

RILEY, Circuit Judge, dissenting.

Because the majority opinion misreads Iowa law and fails to follow circuit precedent, I respectfully dissent.

First, Shaw's complaint clearly alleges jurisdiction under 29 U.S.C. § 1132(e), and states Shaw is bringing "this cause of action pursuant to 29 U.S.C. § 1132(a)(1)(B) (2001)."[9] In the district court and on appeal, Shaw argues her

---

[9]Section 1132(a)(1)(B) provides

A civil action may be brought–
      (1)    by a participant or beneficiary–
            (B)    to recover benefits due to him under the terms of his

employer, acting as plan administrator, (1) abused its discretion under the ERISA plan, and (2) breached its fiduciary duty with respect to ERISA. Shaw clearly has not alleged or argued an ordinary breach of contract action.

Second, the majority contends Shaw's action resembles an insured's claim against her insurer for denial of coverage and breach of contract. Shaw obviously did not bring a claim as an insured against an insurer, and, as explained above, did not sue for an ordinary breach of contract. Shaw filed an ERISA lawsuit as an employee covered by an employer's ERISA plan, arguing abuse of discretion and breach of fiduciary duty. The resemblance falls short.

I will discuss first the statute of limitations for Shaw's abuse of discretion claim, and then address the statute of limitations for Shaw's breach of fiduciary duty claim.

## A.      Statute of Limitations–Abuse of Discretion

Shaw first argues her employer, acting in its capacity as plan administrator, abused its discretion in denying her health benefits under the employer's ERISA plan. ERISA does not have an express statute of limitations for a cause of action based on abuse of discretion by the plan administrator. As the majority recognizes, we must look to, and borrow from, the most analogous Iowa statute of limitations. See Johnson v. State Mutual Life Assurance Co. of Am., 942 F.2d 1260, 1262 (8th Cir. 1991). The majority concludes Shaw's action is most analogous to a general cause of action for breach of contract, rather than the specific Iowa Wage Payment Collection Act (IWPCA). However, the IWPCA expressly applies to the employee and employer relationship, including (1) payments for health benefits due an employee, and (2) expenses incurred and recoverable under a health benefit plan. Iowa Code § 91A.2(7)(c) & (d). The IWPCA seems obviously the most analogous statute of

_____

plan, to enforce his rights under the terms of the plan
. . . .

-12-

limitations, more analogous than a general statute of limitations for breach of contract actions.

Iowa Code section 91A.2 defines wages as "[a]ny payments to the employee or to a fund for the benefit of the employee, including . . . payments for medical, health, hospital, . . . which are due an employee under an agreement with the employer or under a policy of the employer," Iowa Code § 91A.2(7)(c), and "[e]xpenses incurred and recoverable under a health benefit plan," id. § 91A.2(7)(d). The unmistakable language of these sections establishes the IWPCA covers Shaw's claim.

The majority attempts to distinguish section 91A.2(7)(d) by stating the IWPCA only treats as wages those expenses of the employee that are preauthorized by the employer and incurred by the employee. Because McFarland did not authorize payment of the expenses in this case, the majority opines the expenses cannot constitute wages. Such a strained interpretation of the IWPCA would allow the statute to apply only when the plan administrator authorizes payment. This view would result in real anomalies in future cases.

It is undisputed the expenses here were "incurred." Based on Shaw's reading of the health benefit plan, as well as her doctor's reading of the plan, Shaw contends her expenses are "recoverable," which is precisely the issue for resolution. The terms "incurred and recoverable" in this context mean the expenses are authorized by the plan documents, not authorized by the employer on a case-by-case basis, as the majority contends. The majority opinion is completely contradictory in finding the benefit was not "incurred and recoverable" within the meaning of the IWPCA, and then in awarding Shaw recovery under the plan for the very expenses incurred (i.e., by ultimately finding the expenses were actually incurred and recoverable).

The majority cites Iowa Code section 91A.3(6), stating it "believe[s] the IWPCA only treats as wages those '[e]xpenses by the employee which are *authorized*

-13-

*by the employer* and incurred by the employee.'" <u>Supra</u> at 9.  Section 91A.3(6), however, is entitled "Mode of payment."  Iowa Code § 91A.3(6).  This section does not contain a definition of "wages" and covers the procedures for payment of wages, including expenses.  Section 91A.2, on the other hand, is entitled "Definitions," and contains a specific definition of "wages."  Iowa Code § 91A.2(7)(d).  The IWPCA clearly does not treat as wages *only* those expenses authorized by the employer and incurred by the employee.  The IWPCA treats as wages, *inter alia*, "[e]xpenses incurred and recoverable under a health benefit plan."  <u>Id.</u>  The "authorized" and "incurred" language the majority uses to define "wages" has no place in the analysis of Shaw's claims.

The majority opinion's logic minimizes the IWPCA's actual reach and renders section 91A.2(7)(d) virtually meaningless.  An employer could avoid the IWPCA, whether inside or outside the ERISA context, by denying authorization under a health benefit plan, making benefits nonrecoverable.  Thus, even after an employer's bad faith refusal to authorize an expense incurred by the employee and recoverable under the plan documents, section 91A.2(7)(d) would not apply under any circumstances.

Our ruling in <u>Mead v. Intermec Technologies Corp.</u>, 271 F.3d 715 (8th Cir. 2001), is indistinguishable from Shaw's case.  The benefits at issue in both <u>Mead</u> and this case were included within the definition of wages in the IWPCA.  In <u>Mead</u>, Intermec was sued as a plan administrator, just as McFarland is in this case.  Intermec concluded Mead was not eligible for the benefits he sought under a short-term disability plan.  <u>Id.</u> at 716-17.  In the present case, McFarland denied Shaw's request for preauthorization for the surgery, because McFarland concluded Shaw was not eligible for these benefits under the health benefit plan.  The <u>Mead</u> court interpreted the IWPCA and found Mead's claim for short-term disability benefits fell within the IWPCA and was barred by its two-year statute of limitations.  <u>Id.</u>  The majority in this case states the benefits at issue in <u>Mead</u> "fit easily within the definition of wages provided in § 91A.2(7)(c)."  The benefits Shaw seeks fit just as easily within this

-14-

statutory definition of wages contained in section 91A.2(7)(c), and fit even more clearly within section 91A.2(7)(d): "[e]xpenses incurred and recoverable under a health benefit plan." Accordingly, Mead should control our statute of limitations determination.

The majority's opinion also runs afoul of this court's ruling in Adamson v. Armco, Inc., 44 F.3d 650 (8th Cir. 1995). In Adamson, we analyzed the Minnesota law governing claims for recovery of wages and other compensation. Id. at 652-54. Four hundred eighty-seven former employees sued to recover benefits under unfunded welfare benefit plans. Like Iowa, Minnesota has both a general contract statute of limitations (six years) and a specific statute of limitations for the recovery of wages (two years). Id. at 652 (citing Minn. Stat. §§ 541.05(1), 541.07(5)). Also like Iowa, Minnesota's wage law was meant to be broadly construed and applied. Compare id. (citing Stowman v. Carlson Cos., 430 N.W.2d 490, 493 (Minn. Ct. App. 1988) (observing Minnesota courts have broadly applied Minnesota's wage claims statute), with Kartheiser v. Am. Nat'l Can Co., 271 F.3d 1135, 1136 (8th Cir. 2001) (observing the IWPCA "is remedial in nature and is meant to be liberally construed"). In Adamson, we decided the wage claims statute covered the welfare benefits sought and applied the two-year statute of limitations. Adamson, 44 F.3d at 652-53. Adamson and its reasoning should also govern our decision here.

The Third Circuit, citing Adamson, ruled a Delaware one-year statute of limitations for contracts within the employer-employee relationship was analogous to the ERISA case before it. Syed v. Hercules, Inc., 214 F.3d 155, 159-60 (3d Cir. 2000). The statutes at issue in Syed were Delaware's three-year statute regarding "general actions on a promise," and a specific one-year statute that covered employment disputes, particularly actions to recover "upon a claim of wages . . . or for any other benefits arising from such work, labor or personal services performed." Id. at 159 (quoting Del. Code Ann. tit. 10, § 8111). In rejecting a similar general contract argument as the majority adopts here, and concluding the one-year statute applied, the

-15-

Third Circuit noted that, although the Delaware Wage Payment Collection Act did not provide a statutory remedy for the denial of benefits, its definition of benefits clearly encompassed the benefits the plaintiff had sued to recover. Id. at 161 n.5. The Third Circuit recognized the one-year statute was short, but the court could not say a one-year statute of limitations was inconsistent with ERISA's policy. Id. at 161.

Likewise, the IWPCA two-year statute of limitations is reasonable, permitting a claimant enough time to file a claim and also protecting the corpus of the ERISA plan for other employees in the group. See Adamson, 44 F.3d at 653 (concluding "a two-year statute of limitations for [ERISA] benefit claims is not fundamentally unfair or at odds with federal policy").

## B.      Statute of Limitations–Breach of Fiduciary Duty

Finally, the majority notes Shaw cannot recover monetary damages based on the plan administrator's breach of fiduciary duty. See supra at 11. While I agree with the majority, due to my opinion that Shaw's abuse of discretion claim for recovery of benefits is barred by the statute of limitations, a ruling is necessary as to whether Shaw may bring an action individually to recover monetary damages for a breach of fiduciary duty. She cannot. 29 U.S.C. § 1109 does not permit an individual beneficiary to recover compensatory damages based on breach of fiduciary duties. See Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 144 (1985) (stating "the entire text of § [1109] persuades us that Congress did not intend that section to authorize any relief except for the plan itself. In short . . . , we do not find in § [1109] express authority for an award of extracontractual damages to a beneficiary."); Slice v. Sons of Norway, 34 F.3d 630, 632 n.6 (8th Cir. 1994) ("In Massachusetts Mutual . . . , the Supreme Court held that, under 29 U.S.C. § 1109(a), an individual could not recover extra-contractual damages caused by a breach of a fiduciary's duties.").

Furthermore, even if Shaw could bring an *individual* breach of fiduciary duty claim to recover compensatory damages, she commenced her lawsuit outside the

ERISA three-year statute of limitations for actions arising under section 1109.  29 U.S.C. § 1113 ("after . . . plaintiff had actual knowledge of the breach or violation").

## C.    Conclusion

Because the applicable two and three year statutes of limitations expired before Shaw filed suit, I would reverse the district court's grant of summary judgment in Shaw's favor.

_____