# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3345

_____

Arthur L. Christoffersen      *
Irrevocable Trust, u/d/o 11/19/1991,      *
by and through its co-trustees,      *
Theresa A. Christoffersen,      *
Dawn Christoffersen Minkoff and      *    Appeal from the United States
Eric Matthew Christoffersen,      *    District Court for the
     *    Northern District of Iowa.
        Appellant,      *
     *
   v.      *
     *
Yellow Book USA,      *
     *
        Appellee.      *

_____

Submitted: May 16, 2008
Filed: August 7, 2008

_____

Before RILEY, HANSEN, and ARNOLD, Circuit Judges.

_____

RILEY, Circuit Judge.

The Arthur L. Christoffersen Irrevocable Trust (Trust), through its trustees, brought this lawsuit against Yellow Book USA (Yellow Book) claiming a breach of contract and a violation of the Iowa Wage Payment Collection Act, Iowa Code § 91A

et seq. Yellow Book filed a motion for summary judgment, and the district court[1] granted the motion. The Trust appeals. We affirm.

## I. BACKGROUND

The relevant facts are undisputed. Arthur L. Christoffersen (Christoffersen) was the President and CEO of McLeodUSA Publishing Company (McLeodUSA). In April 2002, Yellow Book acquired McLeodUSA, and in September 2002, Christoffersen resigned from his employment.

At the time of his resignation, Christoffersen executed two agreements with Yellow Book: (1) a Separation and Release Agreement (Release), and (2) an Agreement to provide consulting services (Consulting Agreement). Under the Consulting Agreement, Christoffersen was to be paid each month for consulting fees for a period of five years. This agreement stated:

> During the term of this Agreement, Mr. Christoffersen shall be paid as compensation fees for services Sixteen Thousand Six Hundred Sixty-Seven and no/100 Dollars ($16,667.00) each month commencing on November 1, 2002 and continuing on the first day of each month thereafter through October 1, 2007.

The Consulting Agreement provided that Christoffersen devote up to 20 hours per month of consulting services as an independent contractor.

The Release declared, in part:

> [Christoffersen] hereby covenants not to sue or bring any claim against Releasees and acknowledges and agrees that this Agreement may be pleaded as a full and complete defense to, and may be used as the basis

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

for an injunction against, any action, claim, suit or other proceeding that may be instituted, prosecuted or attempted in breach of this Agreement.

The Release indicates why Christoffersen and Yellow Book entered into the Consulting Agreement: "In consideration of [Christoffersen]'s agreement to an acceptance of this [Release], . . . [Yellow Book] [] entered into a Consulting Agreement with [Christoffersen] . . . ." The Release further provides:

> This [Release] and the Consulting Agreement set forth the entire agreement between [Yellow Book and Christoffersen] relating to the subject matter hereof and there are no other agreements or understandings, whether oral or in writing, relating thereto.

In December 2005, approximately three years after entering into these contracts with Yellow Book, Christoffersen died. It is undisputed: (1) the agreements do not have a provision discussing the impact of Christoffersen's death on the agreements, and (2) Christoffersen received payments under the agreements during his life, but Yellow Book stopped the payments after Christoffersen died.

The Trust brought this action claiming Yellow Book is obligated to continue paying the consulting fees for the remainder of the Consulting Agreement (approximately two years) even though Christoffersen is deceased and unable to provide consulting services. The Trust seeks recovery claiming (1) breach of contract, and (2) a violation of the Iowa Wage Payment Collection Act.

## II.    DISCUSSION

We review de novo a grant of summary judgment. See Pope v. ESA Servs., Inc., 406 F.3d 1001, 1006 (8th Cir. 2005). Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Pope, 406 F.3d at 1006. A

-3-

summary judgment can be affirmed "on any ground supported by the record." Robinson v. Brandtjen & Kluge, Inc., 500 F.3d 691, 694 (8th Cir. 2007) (citation omitted).

### A.     Breach of Contract

The parties agree Iowa law applies to this diversity case. "In interpreting a contract under Iowa law, we must first examine the plain language of the contract." Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 711 (8th Cir. 2004) (citation omitted). "If [the contract] terms are unambiguous, we may not substitute a different meaning for that which the parties clearly intended and embodied in unambiguous terms." Id. (citation omitted). "On the other hand, if the terms are ambiguous, we may consider extrinsic evidence to determine the intent of the parties in signing the contract." Id. (citation omitted).

The terms of the Consulting Agreement are clear. The district court correctly focused on the contract's plain language, and on (1) whether Yellow Book committed any material breach under the terms of the contract, and (2) whether there were circumstances excusing Yellow Book from its duty to pay the consulting fees. The district court determined Yellow Book did not commit any material breach, concluding Christoffersen's death discharged Yellow Book's duty to pay because Yellow Book's obligation was to pay for Christoffersen's consulting services. Christoffersen is no longer available to provide the services for which Yellow Book contracted. Christoffersen's inability to perform the contracted services is manifestly a material breach.

The Trust contends (1) Christoffersen would have rejected the proposition that Yellow Book's obligation ended at his death, and (2) in fact, Christoffersen never was asked to provide any consulting services while he was alive. First, if Christoffersen expected the Consulting Agreement's payments to continue after his death, he should have negotiated that language into the contract. Second, the Consulting Agreement

specifically indicates Yellow Book may not need to request any consultation services from Christoffersen, but Christoffersen had to make himself available if his services were required.  The Consulting Agreement states:

> Yellow Book engages Mr. Christoffersen in a consulting capacity as set forth in this Agreement and Mr. Christoffersen hereby accepts this engagement for a term of five years beginning on November 1, 2002 and ending on October 31, 2007.  During this Agreement's term, Mr. Christoffersen will devote up to twenty (20) hours per month at times convenient to the parties for the performance of services for Yellow Book.  *If Yellow Book does not require twenty (20) hours of service from Mr. Christoffersen in any month, Yellow Book may accrue up to forty (40) hours of such unused time which Mr. Christoffersen will provide at a later date as is mutually convenient to the parties.*

(emphasis added).

The Consulting Agreement declares Christoffersen is an independent contractor.  Christoffersen agreed he "shall protect all confidential information," and would not "engage in any business competing with the businesses of Yellow Book . . . within any geographical area in which Yellow Book engaged or was actively planning to engage during the term of this Agreement . . . ."

Contending Christoffersen gave up substantial benefits by entering into the agreements, the Trust wants Yellow Book to continue paying Christoffersen's fees.  This contention, when contrasted with the plain language of the contracts, has no basis.  Neither the Consulting Agreement nor the Release contain any provision to support the Trust's position.  The documents do not discuss the impact of Christoffersen's death, much less indicate Yellow Book must continue paying Christoffersen's consultation fees after his death.  The parties' documents simply state that, in consideration for the Release, Christoffersen obtained the Consulting Agreement, and this agreement in turn states Christoffersen would be paid for

consultation services and Christoffersen should be available to provide those services if Yellow Book requires them.

The Consulting Agreement further states: *"This agreement constitutes the entire agreement among the parties relating to this consulting engagement and supersedes all prior agreements or understandings between [the parties]."* (emphasis added). Absolutely nothing in the language of the Consulting Agreement or the Release indicates Christoffersen should be paid for consulting fees after his death. As the district court noted, these sophisticated parties agreed Yellow Book would pay Christoffersen as long as he was available to provide 20 hours of consultation services per month. In this respect, no ambiguity exists in the parties' Consultation Agreement, and "Iowa law does not allow consideration of extrinsic evidence of the parties' intentions." PMX Industries, Inc. v. LEP Profit Intl., 31 F.3d 701, 703 (8th Cir. 1994). If the parties wanted Christoffersen to be compensated for consulting fees for the duration of the agreement, regardless of Christoffersen's ability to provide those services, the parties could have included that language in their contract.

The district court properly concluded Yellow Book did not breach the Consulting Agreement when Yellow Book discontinued paying Christoffersen's consulting fees after he died and was no longer available to provide those services. Summary judgment was correctly entered in favor of Yellow Book on the Trust's breach of contract claim.

### B.    Iowa Wage Payment Collection Act

The Trust's claim under the Iowa Wage Payment Act (Act) fails as a matter of law because the Trust is not asserting a claim for consulting fees against an employer. The Act, in relevant part, provides:

> "Employer" means a person . . . who in this state employs for wages a natural person. An employer does not include a client . . . or other person who obtains professional services from a licensed person who

provides the services on a fee service basis or as an *independent contractor*.

See Iowa Code § 91A.2(4) (emphasis added). The consulting agreement stated:

> Mr. Christoffersen shall be deemed, for all purposes, to be an *independent contractor and not an employee* and shall not participate in any employee benefit program of Yellow Book by reason of this Agreement or the relationship between the parties created by this Agreement. All withholdings, tax liabilities and contributions shall be solely the responsibility of Mr. Christoffersen.

(Emphasis added). Thus, under the plain wording of the Act, the Trust is not asserting a claim against an "employer," because Yellow Book was receiving services from an independent contractor. The Act's main purpose is "to facilitate the public policy of allowing employees to collect wages owed to them by their *employers*." Shaw v. McFarland Clinic, P.C., 363 F.3d 744, 748 (8th Cir. 2004) (emphasis added) (citation omitted). Yellow Book was not, under the Act, Christoffersen's employer. Because Yellow Book's obligation to pay Christoffersen for consulting fees ended when Christoffersen died, Yellow Book thereafter did not owe Christoffersen any "wages" under the Act. Id. (stating that, under the Act, "'Wages' means compensation owed by an employer." (citation omitted)). The district court also rightly entered summary judgment in favor of Yellow Book on this issue.

## III.   CONCLUSION

Based on the foregoing, we affirm the judgment of the district court.

_____